TOMS v McCONNELL

1. NEGLIGENCE—EMOTIONAL DISTRESS—PARENT AND CHILD—PHYSICAL INJURY—DAMAGES.

    A parent may maintain an action for damages for mental anguish resulting in a definite and objective physical injury generated by witnessing the negligent infliction of injuries upon his child.

2. NEGLIGENCE—EMOTIONAL DISTRESS—DAMAGES—ZONE OF DANGER.

    A plaintiff need not be within a "zone of danger" as a condition precedent to maintaining an action for mental suffering generated by witnessing the negligent infliction of injury upon an immediate family member.

3. NEGLIGENCE—EMOTIONAL DISTRESS—DAMAGES—ARBITRARINESS—COURTS.

    A rule allowing a plaintiff to maintain an action for mental suffering, albeit arbitrary, will be promulgated by the courts where the interests of justice require.

4. NEGLIGENCE—EMOTIONAL DISTRESS—PARENT AND CHILD—FORESEEABILITY.

    That a negligent injury inflicted upon a child will be witnessed by a parent and result in mental anguish to the parent is reasonably foreseeable.

5. NEGLIGENCE—EMOTIONAL DISTRESS—DAMAGES—PHYSICAL INJURY.

    The inability of a plaintiff to function as she did previously, her withdrawal from normal forms of socialization, and her continued state of depression manifest a definite and objective physical injury sufficient to permit recovery in an action for damages for emotional distress.

Appeal from Eaton, Richard Robinson, J. Submitted Division 3 October 9, 1972, at Lansing. (Docket No. 13359.) Decided March 27, 1973.

REFERENCE FOR POINTS IN HEADNOTES
[1–5] 59 Am Jur 2d, Parent and Child § 112 *et seq.*

Complaint by Paula K. Toms and Ardin D. Toms against Max McConnell, Eaton Rapids Public School District, and Barbara I. Strank for damages for mental anguish. Summary judgment for defendants. Plaintiffs appeal. Reversed and remanded.

*Wilfred A. Dupuis,* for plaintiffs on appeal.

*Fraser, Trebilcock, Davis & Foster* (by *Peter L. Dunlap),* for defendant Max McConnell.

*Denfield, Timmer & Seelye, P. C.,* for defendants Eaton Rapids Public School District and Barbara I. Strank.

Before: DANHOF, P. J., and BRONSON and T. M. BURNS, JJ.

T. M. BURNS, J. This case comes to us from a summary judgment entered in favor of the defendants on the ground that plaintiffs had failed to state a claim upon which relief could be granted. GCR 1963, 117.2(1). Thus for the purpose of this appeal, all well-pled factual allegations set forth in plaintiffs' complaint will be accepted as true. *Martin v Fowler,* 36 Mich App 725 (1971).

The facts gleaned from the plaintiffs' complaint may be briefly summarized as follows: At the close of the school day on April 22, 1968, plaintiffs' nine-year-old daughter boarded a school bus for her return trip home. A short time later the bus arrived across the street from the child's residence. As the two alternating red lights on the bus were signalling, it was stopped and discharging children, the youngster in question alighted from the vehicle, walked in front of it, and started to cross the street. At this point defendant Mc-

Connell, driving a panel truck at an "immoderate rate of speed", overtook the parked bus and in the process struck and killed plaintiffs' daughter. The child's mother, who was watching for her children to return home from school, witnessed the entire mishap in horror, shock, and disbelief. As a direct result of this incident, she suffered a severe traumatic depressive reaction and withdrew from normal forms of socialization. This condition has continued from the date of the accident and in all probability will continue into the future.

Plaintiffs brought suit against the operator of the school bus (defendant Strank), her employer (defendant school district), and the driver of the panel truck (defendant McConnell). The deceased child's mother sought damages based upon the aforementioned mental anguish generated by witnessing her daughter's accidental death. The deceased child's father sought damages for the resultant loss of his wife's services, companionship, consortium, and her attendant hospital and medical expenses.

Thereafter all of the defendants moved for a summary judgment pursuant to GCR 1963, 117.2(1) on the ground that plaintiffs had failed to state a claim upon which relief could be granted. The trial court concurred and granted the defendants' motion opining that "recovery could not be had for distress of mind caused by witnessing another's suffering". The question of governmental immunity, although apparent from the facts of the case, was not raised by the parties. Therefore, the issue is not properly before this Court and will be neither discussed nor decided.

Under the facts of the instant case, the sole and narrow question for determination is whether without sustaining any physical impact, a parent

can recover for mental anguish or distress occasioned by witnessing the negligent infliction of injuries upon an immediate family member, in this instant case a child.

The other jurisdictions which have considered the question posed by the instant case are split. For example, on facts essentially indistinguishable from those in the case at hand the Vermont Supreme Court although noting it had abolished the "no impact, no recovery rule" in mental suffering cases (as has Michigan, 384 Mich 4 [1970]), felt that redress for mental anguish must be kept within manageable limits, concluded that mental anguish under the circumstances was not reasonably foreseeable, and dismissed plaintiff's suit. *Guilmette v Alexander,* 128 Vt 116; 259 A2d 12 (1969).

Likewise where a mother saw her six-year-old daughter crushed to death by a truck as the child was exiting a school bus, the New Hampshire Supreme Court denied the mother any damages for the mental shock and anguish incurred by witnessing the event. The Court reasoned that it could fix no limits for liability which were not wholly arbitrary. *Jelley v LaFlame,* 108 NH 471; 238 A2d 728 (1968). See also *Hyatt v Adams,* 16 Mich 180 (1867).

On the other hand, the California Supreme Court after diligently reviewing the arguments traditionally employed to deny bystander recovery for mental suffering found such arguments wanting and allowed a mother to recover damages for mental shock and anguish produced by seeing her infant daughter struck and killed by an automobile as the child was crossing a highway. *Dillon v Legg,* 68 Cal 2d 728; 69 Cal Rptr 72; 441 P2d 912; 29 ALR3d 1316 (1968).

In the case at bar, defendants rely on *Hyatt v*

*Adams, supra,* and *Ellsworth v Massacar,* 215 Mich 511, 518 (1921), for the proposition that there can be no recovery for mental anguish occasioned by witnessing the negligent infliction of injuries upon another.

The plaintiff in *Hyatt* was denied any recovery for mental distress brought about by his wife's untimely death three days after an operation was allegedly negligently performed by the defendant physician. Similarly in *Ellsworth* plaintiff's claim for loss of his wife's services due to her mental shock resulting from mob action near their home was disallowed. In denying plaintiff's claim the Court concluded: "None of the unlawful acts complained of [mob action practiced upon the plaintiff husband] were directed towards her [the wife] or committed in her presence".

Although both *Hyatt* and *Ellsworth* precluded a third party from recouping damages for mental anguish suffered as a result of tortious injuries inflicted upon a close family member, they do not stand for the principle that there can be no recovery for mental anguish generated by witnessing the negligent infliction of tortious injuries upon an immediate family member, since in neither *Hyatt* nor *Ellsworth* were the tortious acts witnessed by the party suffering the mental anguish. Therefore inasmuch as these two cases did not reach the question presented by the instant case, namely whether without suffering any physical impact a party can recover for mental anguish resulting from witnessing the negligent infliction of injuries upon an immediate family member, they are materially distinguishable from and not controlling on this issue. Consequently the question, in this state at least, is an open one.

The plaintiffs herein assert that the abolition of

the "no impact, no recovery rule" in mental suffer-
ing cases, coupled with scientific advances which
permit the measurement of psychological injuries
paves the way for recovery in a case where, as
here, a plaintiff suffers mental distress from wit-
nessing the negligent infliction of injuries upon an
immediate family member. On the other side,
defendants, echoing the arguments raised in
*Hyatt, Ellsworth, Guilmette,* and *Jelley,* contend
that recovery should be denied to the deceased
child's mother in that she was not in fear of her
own safety, *i.e.,* in a "zone of danger", and that
any rule allowing recovery under the circum-
stances of this case would have no just stopping
point, would be wholly arbitrary, and would result
in a proliferation of fraudulent claims.

I. *Zone of Danger Requirement:*

As previously recounted, defendants assert that
the deceased child's mother cannot recover dam-
ages for emotional distress because she watched
the entire accident unfold from the confines of the
family dwelling and consequently was not in fear
of her own safety. In other words she was not in
any so-called "zone of danger". See 29 ALR3d
1337, *Right to Recover Damages in Negligence for
Fear of Injury to Another, or Shock or Mental
Anguish at Witnessing Such Injury.* This argu-
ment proves too much.

Prior to 1970 it was well settled in this jurisdic-
tion that there could be no recovery for mental
suffering unless it was accompanied by some physi-
cal impact. *Manie v Matson Oldsmobile-Cadillac
Co,* 378 Mich 650 (1967). This principle became
known as the "no impact, no recovery rule". This
concept, however, was recently overturned in *Da-
ley v LaCroix,* 384 Mich 4, 12–13 (1970). In *Daley*
the defendant's automobile left the roadway and

sheared off a utility pole which in turn struck the electrical lines leading to the plaintiff's home precipitating a great electrical explosion and causing considerable property damage in the home. Plaintiffs who were in the dwelling at the time brought an action for the ensuing fright and mental suffering engendered by the accident. The trial court granted a directed verdict for the defendants on the theory that plaintiff's mental suffering, if any, was not accompanied by any physical impact. The Supreme Court, however, abolished the time-worn no impact-no recovery rule, reversed the directed verdict granted to the defendant and held that:

> "where a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock."

Inasmuch as this jurisdiction has nullified the impact prerequisite for recovery of damages in mental suffering cases, any requirement that a plaintiff must be in a "zone of danger" to recover must perforce fall since the zone-of-danger concept presupposes that a plaintiff will be close enough to the tortious activity to fear a physical impact. Thus the zone-of-danger rule is based upon a fact now deemed irrelevant. Furthermore, the hopeless artificiality and harshness of the zone-of-danger rule was amply demonstrated by *Dillon v Legg, supra.* In that case as a mother and her two daughters were walking along the edge of a highway, one of the children attempted to cross the roadway and was struck and killed by an auto. The mother and surviving child subsequently brought an action for mental distress caused by

witnessing the accident. Defendant moved for a summary judgment. The motion as to the deceased child's sister was denied on the ground that she stood in close proximity to the point of impact and could have been within the zone of danger. However, the motion as to the mother was granted since she stood a few feet further from the accident and therefore was not in a zone of danger. Such a result could not be justified. Hence the California Supreme Court reversed the summary judgment as to the mother and observed at 68 Cal 2d 733; 69 Cal Rptr 75; 441 P2d 915; 29 ALR3d 1320:

"The case thus illustrates the fallacy of the rule [zone-of-danger rule] that would deny recovery in the one situation and grant it in the other. In the first place we can hardly justify relief to the sister for trauma which she suffered upon apprehension of the child's death and yet deny it to the mother merely because of a happenstance that the sister was some few yards closer to the accident."

We hold, therefore, that a plaintiff need not have been within a "zone of danger" as a condition precedent to maintaining an action for mental suffering generated by witnessing the negligent infliction of a tortious injury upon an immediate family member.

II. *Arbitrariness of a Rule Permitting Plaintiffs to Maintain an Action for Mental Suffering:*

Next the defendants argue that any rule allowing the plaintiffs to maintain an action for mental suffering would be wholly arbitrary. This contention requires only a brief comment.

Where the interests of justice require, the courts of this state have never been timorous in promulgating rules, albeit arbitrary, to meet the situation presented. See for example *Aldrich v Scribner,* 154

Mich 23 (1908), and the cases cited therein which abolished the distinction between innocent and intentional misrepresentation in order to create a remedy for a wrong which would have otherwise gone unredressed.

III. *Infinite Liability Imposed by any Rule Allowing Plaintiffs to Maintain an Action for Mental Suffering:*

It is the defendants' position that any rule permitting the plaintiffs to maintain their suit for mental suffering would, as a matter of policy, be unwise in that there would be no logical or just stopping point and thus would impose infinite liability upon prospective defendants. This was the same reason used to deny recovery in *Hyatt v Adams, supra.*

We note at the outset that devising one hard and fast rule for limiting bystander recovery in mental suffering cases would be difficult and complex if not impossible. However, we need not and indeed should not attempt to pose and solve a myriad of hypothetical factual situations relative to cases of this nature which may or may not arise in the future. The problem of limiting liability will be best surmounted and will be more justly resolved for all concerned by treating each case on its own individual facts. The facts of the instant case, therefore, limit us to a consideration of whether a parent upon witnessing the negligent infliction of injuries upon its child and suffering mental anguish as a result may maintain an action to recover for emotional distress.

IV. *Foreseeability:*

Defendants argue that it is not reasonably foreseeable that a negligent injury inflicted upon a child will be witnessed by the parent and result in mental anguish to the parent.

The implausibility of this contention is answered by the numerous cases involving parents witnessing their children negligently injured by third parties, see 29 ALR3d 1337, and by Dean Prosser who wrote:

"[W]hen a child is endangered, it is not beyond contemplation that its mother will be somewhere in the vicinity, and will suffer serious shock." Prosser on Torts (3d ed), p 353.

V. *Proliferation of Suits and Fraudulent Claims:*

Next, defendants assert that to permit the instant plaintiffs to maintain an action for mental suffering under the circumstances of this case would result in a great proliferation of suits and fraudulent claims. This is but another version of "opening the flood gates of litigation" argument, and it is without merit.

Our jurisdiction permits the recovery of damages for mental anguish. *Daley v LaCroix, supra.* There is no reason to assume or expect that there will be more of an upsurge in the number of claims whether legitimate or fraudulent in one area of mental suffering than in another.

VI. *The Requirement of a Definite Physical Injury:*

Without admitting that the plaintiffs are entitled to relief, defendants assert that in any event the deceased child's mother did not suffer the requisite definite and objective physical injury required by *Daley v LaCroix, supra,* as a condition precedent to recovery. We disagree.

While it is true that *Daley, supra,* at p 12, requires a "definite and objective physical injury" to be manifested before recovery can be had, the scope and meaning of that phrase is delineated by

the facts of the case. In *Daley,* plaintiff claimed that she suffered loss of weight, inability to perform ordinary household duties, extreme nervousness, and irritability. Plaintiff's minor son in that case was held entitled to take his case to the jury on the issue of physical injury where the only testimony on his behalf was to the effect that he was nervous. In the present case the deceased child's mother asserts that as a result of seeing her daughter killed, she has withdrawn from normal forms of socialization, was for a period of nine months following the accident unable to function as she did previously, and continues in a state of depression. The inability of the plaintiff to function and her continued state of depression read in the light most favorable to the plaintiff, as it must be after a summary judgment, is at least a physical injury of the same magnitude as the inability to do housework and nervousness suffered by the plaintiffs in *Daley.*

VII. *Conclusion:*

In view of the foregoing, we are convinced that taken as a whole, the arguments advanced by the defendants are neither compelling nor persuasive. In short there is no basis either in law or logic upon which to deny the plaintiffs the opportunity to have their day in court to adjudicate their claim on its merits.

We hold, therefore, that a parent may maintain a cause of action for mental anguish resulting in a definite and objective physical injury generated by witnessing the negligent infliction of injuries upon its child. Accordingly, the Eaton County Circuit Court erred by dismissing the plaintiffs' suit.

Reversed and remanded for proceedings consistent with this opinion.

All concurred.